IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                          CRIMINAL ACTION NO. 2:21-cr-00225

FRANKIE DELEON BAKER,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant's Revised Motion to Suppress Evidence* (Document 47), the *Defendant's Memorandum in Support of Defendant's Revised Motion to Suppress Evidence* (Document 48), the *United States' Response to Defendant's Motion to Suppress* (Document 50), and the *Defendant's Reply to the Government's Response to Defendant's Motion to Suppress* (Document 57), as well as all attached exhibits. For the reasons stated herein, the Court finds that the motion to suppress should be granted.

**FACTS AND BACKGROUND**[1]

The Defendant, Frankie DeLeon Baker, was indicted on November 9, 2021, on charges of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §841(a)(1) and

---

[1] The facts are drawn from the documentary evidence submitted by the parties. Because the Court finds that suppression is appropriate even when accepting the United States' version of any contested facts, a hearing to resolve factual disputes is not necessary.

1

Carrying a Firearm During and in Relation to a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A).

The charges arise from a traffic stop on September 4, 2021. Mr. Baker was driving a light blue Acura with California plates in or near Logan, West Virginia. Trooper Z.S. Holden and Trooper R.L. Morgan were on road patrol in the area. Trooper Holden asserts that he noticed a missing running light and observed Mr. Baker swerve left of center then back into his lane.[2] Trooper Holden turned the police cruiser around to follow the Defendant. He states that he observed a broken side mirror and decided to conduct a traffic stop.

Mr. Baker pulled over and Trooper Morgan approached his passenger's side window. Trooper Morgan told him he had crossed the white center line. Trooper Holden approached the driver's side window and pointed out his side mirror was missing the glass and was considered defective equipment. Mr. Baker provided his license and registration. Trooper Morgan returned to the cruiser to check his information while Trooper Holden spoke with Mr. Baker. Mr. Baker indicated that his car had recently been towed in Kentucky and joked that he got pulled over "every day." (Def.'s Ex. A, bodycam video footage at 2:54.)[3] He stated that he was in the area to look for work in the mines. He said he had stopped at McDonald's recently, but was not able to accurately describe his route.

Approximately six minutes into the video, Trooper Morgan returned to the vehicle after confirming Mr. Baker's valid license and registration, and Trooper Holden directed him to perform

---

[2] The bodycam video of the traffic stop has no sound for the minute prior to the stop but does include video of the inside of the cruiser immediately prior to the stop. Trooper Holden can be observed texting with his phone against the steering wheel. Dash cam video is not available because the dash cam in Trooper Holden's cruiser was nonfunctional.

[3] The times noted herein are based on the times reflected on the bodycam footage, which began about one minute before the troopers approached Mr. Baker's vehicle.

2

a field sobriety test. Trooper Morgan patted Mr. Baker down, and Trooper Holden noted a bit of tape near his sock. Trooper Holden used a flashlight to look inside the vehicle while Trooper Morgan conducted the field sobriety test. He noticed a black magnetic box, which Mr. Baker permitted him to look inside. It was empty. Trooper Holden questioned him about the purpose of the box, telling Mr. Baker that it was commonly used to conceal contraband, and asked whether there were weapons or anything illegal in the vehicle. Trooper Holden continued to question Mr. Baker about his route. After Mr. Baker completed the field sobriety test without issue, Trooper Holden again looked inside the vehicle and said there were a few suspicious items. Mr. Baker gave consent for a search of his vehicle at approximately 9:30 in the video.

Trooper Holden returned the license and registration and directed Mr. Baker to stand near the front of the vehicle. Trooper Morgan conducted another, more thorough, pat down search of the Defendant. Trooper Holden searched through a McDonald's bag in the front seat, paying particular attention to scraps of plastic.[4] At approximately 10:52, he commented "something's going on here," citing the "rips of little bags." At about 11:38, he pointed out an object in the center console, commenting to Trooper Morgan, "is that a sex toy?" He inquired of Mr. Baker, who initially said he did not know what it was, and that it had just been left in the car. Trooper Holden instructed Trooper Morgan to get some gloves and cut it open. While Trooper Morgan was dissecting the butt plug, at around 13:52, Trooper Holden informed Mr. Baker that he was going to detain him, though he was not arrested. Mr. Baker said he had just gotten out of jail. Trooper Holden cuffed Mr. Baker behind his back, went back to the car for a moment, and asked Mr. Baker about why he had been in jail. At about 15:50, Trooper Holden placed him in the

---

[4] The plastic in the video appears to be plastic wrapping from fast food cutlery and similar packaging.

3

backseat of the police cruiser, stating that he was suspicious because of the butt plug, particularly given Mr. Baker's recent time in jail. Mr. Baker stated that it was "just a butt plug." (Bodycam video footage at 15:45.)

Trooper Morgan and Trooper Holden looked at the interior of the butt plug, and Trooper Morgan noted the presence of lubricant in it. Finding no drugs, Trooper Holden commented, "that means there's gonna be a shitton of money in the car somewhere." (*Id.* at 16:30.) Trooper Holden confirmed with Trooper Morgan that Mr. Baker had valid insurance. They continued to search the vehicle. After finding no contraband in the passenger compartment, the officers briefly discussed the tape they had noticed on Mr. Baker's shoe. They searched the trunk and under the hood without finding contraband. They searched the interior of the car more closely, as well as checking under the vehicle. Trooper Holden communicated with dispatch, seeking more information on his recent arrest and criminal history.

At 30:40, Trooper Holden instructed Trooper Morgan to "go take his shoes off." (*Id.* at 30:40.) As Trooper Morgan was conducting the search of Mr. Baker, Trooper Holden had a phone call with dispatch, during which he learned that Mr. Baker had been arrested on drug charges in Kentucky three days earlier. Trooper Morgan found a small baggie with suspected methamphetamine inside Mr. Baker's sock. At about 33:15, Trooper Holden decided to arrest Mr. Baker. They arranged to have his vehicle towed, and Trooper Holden directed Trooper Morgan to take photographs of the items they had found suspicious and the baggie of suspected methamphetamine.

Trooper Morgan submitted an application for a warrant to search Mr. Baker's vehicle on September 5, 2021. The Affidavit and Complaint for Search Warrant seeks to search the vehicle

4

and any locked boxes or compartments or containers in or on the vehicle for "any and all drug paraphernalia, bags, packages, scales, foils used in the deliver/sells or use of controlled substances." (Def.'s Ex. D, Warrant Application at 2) (Document 47-4.) In the affidavit, he describes his experience and training, including noting training that taught him that evidence can be concealed in hidden compartments in vehicles. He described the initiation of the traffic stop, then states:

> Trooper Holden observed a black in color magnetic container commonly used for concealing illegal narcotics from the detection of law enforcement. At this time, the accused gave Trooper's [sic] verbal consent to search the vehicle in addition to the probable cause from the magnetic container observed in plain view. Upon the search of the vehicle, Troopers located a lubricated rectal concealing device commonly used for concealing illegal narcotics from the detection of law enforcement. Troopers also located multiple plastic bags within the vehicle that had been torn off, which is commonly used to package illegal substances for distribution. The accused advised Troopers he had recently been released from jail in Kentucky where he was found to be in possession of a large amount of Methamphetamine and Marijuana. Troopers asked that accused where he was heading to, the accused stated he was on Route 43, which there is no Route 43 in Logan County. The accused also stated he was coming from McDonalds, Troopers advised him there was no McDonalds in the area he was coming from. Troopers searched the accused and upon the search, Troopers located a plastic bag containing suspected methamphetamine in the left sock of the accused. Troopers placed the accused under arrest for possession of a Schedule II Controlled Substance. It is suspected that the rectal concealment device could have concealed illegal substances which the accused could have kept concealed inside his rectum while incarcerated in Kentucky until his release, which is now concealed inside the vehicle or evidence (such are [sic] U.S. Currency or other items) the accused delivery such narcotics to a location in Logan County after his release.

(Warrant Application at 10-11.)

The search warrant was granted. The search uncovered a hidden compartment in the vehicle. Officers seized two handguns, ammunition, packages containing a total of approximately ten pounds of methamphetamine, three cell phones, and a digital scale.

## STANDARD OF REVIEW

When deciding a motion to suppress, the district court may make findings of fact and conclusions of law. *United States v. Stevenson,* 396 F.3d 538, 541 (4th Cir. 2005). On a motion to suppress, the burden of proof is on the party who seeks to suppress the evidence. *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981). However, once the defendant establishes a proper basis for his motion to suppress, the burden shifts to the government to prove the admissibility of the challenged evidence by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## DISCUSSION

The Defendant argues that the traffic stop was not legitimate from its inception. He contends that the officers' account that they observed him drive left of center and saw an equipment violation is not credible because the bodycam shows Officer Holden texting on a cell phone while driving. In addition, he notes that the dashcam in the police cruiser was not operational and had never been submitted for repair, in violation of West Virginia State Police policy. He further argues that the stop was improperly extended when the officers questioned him about contraband and performed a field sobriety test without grounds for suspecting he was under the influence. He points out that the rather cursory vision and pupil check was interrupted when Officer Holden questioned him about the magnetic box located in his car.

The Defendant further argues that he was unlawfully detained when Officer Holden handcuffed him and placed him in the back of the police cruiser during the consent search, with no reasonable suspicion of any criminal activity or probable cause to support an arrest. Likewise, he argues that Trooper Morgan's removal of his socks and shoes exceeded the scope of a protective frisk. He contends that the officers had no basis to suspect that he was armed to justify a pat down, and even if they did, a protective search is permissible for the purpose of protecting officers from potential violence, not uncovering evidence of a crime. He argues that the unlawful removal of his socks and shoes provided the sole basis for his arrest and the impoundment of his car. Absent the impoundment of the vehicle, and without the evidence obtained during the unlawfully extended traffic stop and unlawful search of his person, he contends that the search warrant for the vehicle would not have been supported by probable cause. Therefore, he argues that all evidence obtained during the search of the vehicle should be suppressed.

The United States contends that the traffic stop was properly initiated based on the officers' observation of traffic and equipment violations. It further argues that the stop was not unlawfully extended because the Defendant consented to the search of his vehicle. The United States contends that Trooper Holden had reasonable suspicion that Mr. Baker was driving impaired because he had crossed the center line, mentioned getting pulled over every day, was unclear on either his recent route or where he had been when his car was towed days earlier, and said he was looking for work in the mines but had experience operating equipment for work on highways. As Trooper Morgan conducted the field sobriety test, Trooper Holden observed the magnetic box and questioned Mr. Baker about it. About three and a half minutes after Trooper Holden found the magnetic box, Mr. Baker consented to a search of his vehicle. Thus, the United States contends

7

that the stop was not unreasonably extended before the Defendant consented to the search. The United States further argues that the magnetic box and the sex toy, which the United States refers to as a "rectal concealment device," provided reasonable suspicion to extend the stop. The United States also argues that placing the Defendant in handcuffs in the police cruiser was supported by their reasonable suspicion that he was involved in drug activity.

The United States concedes that the search of Mr. Baker's person for drugs was improper, and that his arrest based on the suspected methamphetamine found in his sock was unconstitutional. It states that it will not use the methamphetamine found in the Defendant's sock or any statements he made following his arrest. However, it argues that the search of his vehicle was valid, and the officers properly relied on the search warrant. It contends that the search warrant was supported by probable cause even absent the methamphetamine and arrest, citing the magnetic box, the "rectal concealment device," the torn pieces of plastic, the Defendant's recent release from jail in Kentucky on charges of possession of methamphetamine and marijuana,[5] the Defendant's statement that he was coming from McDonald's and had traveled on Route 43, which does not exist in Logan County, and that "[t]he rectal concealment device could have been used to conceal illegal substances while he was incarcerated in Kentucky." (U.S. Resp. at 16.) It emphasizes that "the search of the car was independent of the arrest, and the evidence supporting the warrant was legally obtained." (*Id.*) Even if the Court invalidates the warrant, the United States contends that the good-faith exception applies because the officers reasonably relied on the warrant.

---

5 The warrant application states that he was found to be in possession of a "large amount" of methamphetamine and marijuana. The United States contends that the intention was to reflect the charges found in a records search for felony quantities, not to set forth the Defendant's statement describing the charges.

8

### A. *Traffic Stop*

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. U.S. Const. amend. IV. Brief detention pursuant to a traffic stop constitutes a "seizure" for purposes of the Fourth Amendment and must therefore be "reasonable." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. "[T]he actual motivations of the individual officers involved" and their "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813 (finding pretextual stops permissible). "Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop," including checking ID, licenses, registration, and running a computer check. *United States v. Branch*, 537 F.3d 328, 335–36 (4th Cir. 2008). Extending a stop beyond the scope necessary to accomplish the purposes consistent with resolving the traffic violation requires "either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot." *Id.* at 336.

The facts supporting the grounds for the stop are contested. For purposes of this motion, the Court will presume that Officer Holden observed a traffic violation and/or equipment violation and therefore had probable cause to initiate the traffic stop. He had a brief conversation with the Defendant while Officer Morgan ran his license and registration, finding both to be valid. Mr. Baker showed no signs of impairment during his conversation with Officer Holden. He was unable to accurately describe his route or name the roads he had driven on—but nothing about that is suspicious for a person travelling out of state. He appeared alert and was forthcoming with the

9

officers. Neither officer mentioned observing bloodshot eyes, slurred speech, a scent of alcohol or marijuana, or other indicators of intoxication. Observing him briefly cross the white center line, then pull back into his lane, standing alone, is insufficient to justify extending the stop for field sobriety tests.

The Court finds that the traffic stop was improperly extended prior to the time Mr. Baker gave consent for a search of his vehicle. He was stopped for a brief left-of-center violation and an equipment violation. His license and registration were valid. At that point, the officers could have written a ticket or sent him on his way with a warning. The additional time spent conducting a cursory sobriety test while Officer Holden visually searched the vehicle for any suspicious objects in plain view extended the time necessary to complete the stop. Even if the field sobriety test were supported by reasonable suspicion, Officer Morgan performed only a brief check of the Defendant's pupils and ability to track a point with his eyes, while Officer Holden looked in the windows of the vehicle. Officer Morgan ceased any pretext of performing a field sobriety test at about 7:35 in the bodycam video when Officer Holden began questioning the Defendant about the empty magnetic box, a matter clearly unrelated to the road safety function of a traffic stop.

Although only a few minutes passed between the time the stop could reasonably have been completed and the Defendant's consent to the search, precedent is clear that prolonging a traffic stop to investigate unrelated matters without reasonable suspicion is impermissible. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (holding that extending a traffic stop even for only a few minutes to conduct a dog sniff absent reasonable suspicion constitutes an unlawful seizure).[6]

---

6 This issue arose recently in this Court in the context of a dog sniff, and the Court outlined the precedent prohibiting extending traffic stops to investigate unrelated matters without reasonable suspicion. *See, United States v. Trayvon Wilson*, 2:19-cr-289.

Further, nothing in the record indicates that the officers ever ticketed Mr. Baker for the alleged traffic violations, and Trooper Holden's recommendation of a cheap fix for the side mirror suggests that they would not have written a ticket for the equipment violations. Thus, the legitimate traffic stop was effectively complete when Officer Morgan returned to the vehicle with Mr. Baker's valid license and registration. *See United States v. Villavicencio*, 825 F. App'x 88, 96 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 933, 208 L. Ed. 2d 473 (2020) (explaining that the officer "was free to talk to [the suspect] at least until the moment that all the database checks had been completed").

Compounding the constitutional violation, after Mr. Baker consented to the search of the vehicle and remained standing near his vehicle as directed for several minutes while officers began searching, Officer Holden handcuffed and detained him without reasonable suspicion that he posed a threat or was involved in criminal activity. At that point, Mr. Baker had mentioned a recent arrest, and the officers had found an empty magnetic box, some scraps of plastic, and a sex toy. While drug traffickers may use those objects, they are also commonly associated with non-criminal activities.[7] Importantly, the officers found no drugs or drug residue.

Then, convinced that "something" was going on despite their failure to find evidence to support that hunch, Officer Holden instructed Officer Morgan to remove Mr. Baker's shoes and socks. The United States concedes that this search was unlawful. Therefore, the baggie of suspected methamphetamine that Officer Morgan discovered could not support his arrest, and the United States concedes that it was unlawful as well.

---

[7] The Court more fully analyzes the cited bases of the officers' suspicions in addressing the warrant application.

### B. Search Warrant

The officers subsequently obtained a search warrant for Mr. Baker's car, which was impounded as a result of his unlawful arrest. Absent the arrest, as Mr. Baker points out, he would have continued on his way with his vehicle. Assuming that the officers somehow maintained the ability to search the vehicle and applied for a warrant, the warrant is not supported by probable cause when the illegally obtained evidence is excluded from the warrant application.[8]

The Fourth Amendment requires that search warrants be issued only upon a showing of probable cause. *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996). Courts and magistrates apply a totality of the circumstances approach to determining whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place" to support issuance of a warrant. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). Reviewing courts considering a motion to suppress afford a magistrate's decision great deference, considering only "whether the magistrate had a substantial basis for the decision." *United States v. Lalor*, 996 F.2d 1578, 1581 (4th Cir. 1993). "In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched." *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993).

The independent source doctrine exempts from the exclusionary rule evidence "obtained independently from activities untainted" by a previous illegal search or arrest, even if that evidence was initially discovered due to an unlawful search. *Murray v. United States*, 487 U.S. 533, 537

---

[8] Indeed, the Court is somewhat baffled by the United States' position that, at the same point it concedes that the officers lacked probable cause to arrest Mr. Baker, they had probable cause to impound the vehicle and obtain a warrant to search it for drugs.

(1988). The Supreme Court noted that an officer who enters a premises unlawfully, then later obtains a search warrant, must "convince[] a trial court that no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." *Id*. at 540. In determining whether the search pursuant to the warrant was genuinely independent, courts must consider whether "the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Id.* at 542. The Fourth Circuit has held that a district court evaluating whether unlawfully-obtained information "affected the decision to issue the warrant" should "examine[] the search warrant affidavit absent the illegally-obtained information, to determine whether the untainted portion of the affidavit set forth probable cause." *United States v. Walton*, 56 F.3d 551, 554 (4th Cir. 1995); *but see United States v. Bullard*, 645 F.3d 237, 244 (4th Cir. 2011) (stating that *Murray* requires finding that the warrant application did not include a recitation of officers' observations during the unlawful entry and that the officers would have sought the warrant absent those observations).

The warrant application in this case included reference to the methamphetamine found in the Defendant's sock. That information must be excluded, as it was obtained through the unlawful search of the Defendant's person. The Court will analyze the remaining evidence listed in the affidavit in support of the search warrant application. For purposes of this analysis, the Court presumes that the consent search was valid, despite the Court's previous finding that the stop was improperly extended prior to the Defendant's consent. Thus, the Court's findings herein represent two independent grounds for suppression.

     *i.*  *Magnetic Container*

  The magnetic container was found in plain view in the vehicle. Although the officers stated that these containers are often used to hold drugs and concealed under a vehicle or under the hood, the container was empty. Such containers also have innocent uses, such as concealing a spare key. Its potential to be used to conceal drugs is of little weight given that it did not, in fact, contain drugs or drug residue.

     *ii.*  *Rectal Concealment Device*

  Like the magnetic container, the adult sex toy did not contain drugs or drug residue. Officers who regularly investigate drug offenses may view objects in the context of their potential use in drug offenses but evaluating whether an object supports reasonable suspicion or probable cause requires a finding that the facts "in their totality serve to eliminate a substantial portion of innocent travelers." *United States v. Bowman*, 884 F.3d 200, 213 (4th Cir. 2018) (quoting *United States v. McCoy*, 513 F.3d 405, 413 (4th Cir. 2008)). Officers must have a "particularized and objective basis for suspecting legal wrongdoing" after considering all of the evidence. *Id.* (internal quotation marks and citation omitted). Sex toys are presumably regularly used for sex. Absent any evidence of drugs or drug residue, presuming a sex toy was used to conceal drugs does not have a strong logical basis. The butt plug, therefore. adds little to support probable cause to suspect the vehicle would contain evidence of drug trafficking.

     *iii.*  *Torn Plastic*

  Drugs are often packaged in plastic. Nearly everything consumers purchase is likewise packaged in plastic. The pieces of plastic viewable in the video as Trooper Holden searched the vehicle appeared consistent with fast food packaging, such as the plastic bag containing disposable

cutlery routinely supplied with a drive-thru order. Torn pieces of plastic are sufficiently ubiquitous to offer little to distinguish between innocent travelers and travelers engaged in drug trafficking.

    iv.  *Recent Arrest on Drug Charges*

  The warrant application states: "The accused advised Troopers he had recently been released from jail in Kentucky where he was found to be in possession of a large amount of Methamphetamine and Marijuana." (Warrant Application at 10.) This information was garnered, in part, from a post-arrest statement tainted by the unlawful arrest. However, the Defendant had informed officers that he had been arrested in Kentucky, and their records search revealed that the charges related to possession of methamphetamine and marijuana. A recent history of an arrest for a drug offense could combine with other evidence suggesting drug activity to increase suspicion. An arrest, of course, is not a conviction, and it would be improper to presume that a person who was arrested on a particular charge either (a) was guilty, or (b) continued to engage in the same alleged criminal conduct.

    v.  *Route 43*

  The warrant application also notes the Defendant's inaccurate description of the route he had taken into Logan County and to a McDonald's. It is unclear how a lack of familiarity with Logan County route numbers correlates to involvement in criminal activity. Mr. Baker stated that he was from California and unfamiliar with the area. Nothing about his apparently indirect route to McDonald's or his inability to accurately identify the roads he had driven on could contribute to a finding of probable cause to believe his car contained drugs or other evidence of drug trafficking.

      *vi.*    *Potential Use of Rectal Concealment Device While Incarcerated*

Finally, the United States points to Officer Morgan's speculation that the butt plug "could have concealed illegal substances which the accused could have kept concealed inside his rectum while incarcerated in Kentucky until his release, which is now concealed inside the vehicle or evidence (such [as] U.S. Currency or other items) the accused delivery such narcotics to a location in Logan County after his release." (Warrant Application at 10.) There is, of course, no evidence to support this speculation. As the Defendant's reply brief points out, the "rather large" sex toy would have been difficult to conceal during the cavity search routinely performed on detainees entering jails. (Def.'s Rep. at 12.) Without any evidence of drugs or drug residue in or on the sex toy, there was little basis to believe it was used for an unlawful purpose.

Viewing the evidence collectively, there is not probable cause to believe evidence of drug trafficking will be found in a vehicle because it contains an empty magnetic box, a sex toy, and pieces of plastic, and the driver was recently arrested on drug charges. Officers searched the objects they believed could be used to conceal drugs and found no drugs or residue. They searched the vehicle and found no drugs. Mr. Baker did not appear to be under the influence of drugs. Prior to the unlawful search of Mr. Baker's person and removal of his footwear, there was no evidence that controlled substances were present. The drugs found on Mr. Baker's person very likely impacted the Magistrate Judge's decision to issue a warrant and would be key to a probable cause analysis. Items that may be used in a variety of innocent contexts but are also commonly used for drug trafficking appear much more suspicious when drugs are present.

In short, unlike *Murray* and other cases applying the independent source doctrine, the unlawfully obtained evidence in this case was necessary to support the issuance of the warrant. Therefore, the search of the vehicle pursuant to the warrant was unlawful.

Finally, the United States contends that the good-faith exception applies. The Supreme Court held that the exclusionary rule does not apply "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope," explaining that in such cases "there is no police illegality and thus nothing to deter." *United States v. Leon*, 468 U.S. 897, 920–21 (1984). The Fourth Circuit has held that the good faith exception does not apply when a warrant was issued based on information the officers obtained illegally because "the exclusionary rule operates to penalize the officers for their violation of [the defendant's rights *that preceded the magistrate's involvement*." *United States v. Mowatt*, 513 F.3d 395, 405 (4th Cir. 2008), *abrogated on other grounds by Kentucky v. King*, 563 U.S. 452, 131 S. Ct. 1849 (2011) (emphasis in original). Using the good-faith exception to protect a search that has already failed to meet the independent source doctrine would evade the purpose of both rules.

Accordingly, the Court finds that the search warrant was issued based on unconstitutionally obtained evidence. The fruits of the search of Mr. Baker's person, his arrest, the seizure of his vehicle, and the search of his vehicle must all be suppressed.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Revised Motion to Suppress Evidence* (Document 47) be **GRANTED**. The Court

17

further **ORDERS** that the previous *Defendant's Motion to Suppress Evidence* (Document 36) be **TERMINATED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: January 31, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA